## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division

| | |
|---|---|
| **UNITED WHOLESALE MORTGAGE, LLC** | Case No. |
| | Hon. |
| *Plaintiff*, | |
| **v.** | **JURY TRIAL DEMANDED** |
| **SUZANNE FILLERUP** | |
| *Defendant*. | |

## COMPLAINT

Plaintiff United Wholesale Mortgage, LLC ("UWM") submits the following Complaint against Defendant Suzanne Fillerup ("Fillerup"):

### INTRODUCTION

1.     UWM is a wholesale mortgage lender based in Pontiac, Michigan. It originates residential mortgage loans through independent mortgage brokers and non-delegated correspondent lenders ("Brokerage Partners").

2.     Fillerup, one of UWM's Brokerage Partners, works directly with borrowers to submit loans to UWM.

3.     Fillerup is a party to the Wholesale Broker Agreement (the "Agreement") with UWM. See Exhibit A, Wholesale Broker Agreement.

4. This action arises from Fillerup's submission of materially false and misleading residential mortgage loan applications (the "Loan Applications") to UWM for mortgage-loans (collectively, "the Loans"):

a. XXXXXXXX16, on the property located in Big Bear, California ("Loan 1"). See Exhibit B, Loan File 1 Excerpts.

b. XXXXXXXX44, on the property located in Long Beach, California ("Loan 2"). See Exhibit C, Loan File 2 Excerpts.

c. XXXXXXXX93, on the property located in Visalia, California ("Loan 3"). See Exhibit D, Loan File 3 Excerpts.

d. XXXXXXXX95, on the property located in Ventura, California ("Loan 4"). See Exhibit E, Loan File 4 Excerpts.

e. XXXXXXXX98, on the property located in Citrus Heights, California ("Loan 5"). See Exhibit F, Loan File 5 Excerpts.

f. XXXXXXXX27, on the property located in Van Nuys, California ("Loan 6"). See Exhibit G, Loan File 6 Excerpts.

g. XXXXXXXX89, on the property located in Garden Grove, California ("Loan 7"). See Exhibit H, Loan File 7 Excerpts.

h. XXXXXXXX08, on the property located in Oceanside, California ("Loan 8"). See Exhibit I, Loan File 8 Excerpts.

5.     UWM relied on the misrepresentations when it decided to approve and fund the Loans, which UWM later sold to the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac"). During their routine audits, Fannie Mae and Freddie Mac determined that the Loan Applications contained false information and that, but for the false information, the Borrowers would not have otherwise been approved for the Loans. As a result, the Loans did not meet the requirements of Fannie Mae or Fredie Mac's respective Selling Guides. See generally *Fannie Mae Selling Guide* (May 28, 2025), https://selling-guide.fanniemae.com/; *Freddie Mac Selling Guide* (November 11, 2025), https://guide.freddiemac.com/app/guide/home. Consequently, Fannie Mae and Freddie Mac required UWM to repurchase the Loans, causing UWM significant economic harm because UWM can only resell the Loans to a different investor on the "scratch-and-dent" mortgage market at a significant loss. See Exhibit J Loan 1 Repurchase Request Letter; Exhibit K Loan 2 Repurchase Request Letter; Exhibit L Loan 3 Repurchase Request Letter; Exhibit M Loan 4 Repurchase Request Letter; Exhibit N Loan 5 Repurchase Request Letter; Exhibit O Loan 6 Repurchase Request Letter; Exhibit P Loan 7 Repurchase Request Letter; Exhibit Q Loan 8 Repurchase Request Letter.

6.     UWM brings this action to recover over $697,988.50 in damages it suffered because of Fillerup's fraudulent and negligent misrepresentations.

## PARTIES

7.      UWM is a Michigan limited liability company with its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341. UWM's sole member is UWM Holdings, LLC, which is comprised of two members, SFS Holding Corp. and UWM Holdings Corporation. SFS Holding Corp. is incorporated in Michigan and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341. UWM Holdings Corporation is incorporated in Delaware and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341.

8.      Defendant Fillerup is an individual who resides in Tustin, California and transacts business in Oakland County, Michigan, including by entering into and performing the Wholesale Broker Agreement with UWM.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because this Complaint states an action that is between citizens of different states and, as set out below, involves an amount in controversy that exceeds $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Fillerup because, among other things, she expressly consented to personal jurisdiction in Michigan under the Agreement, and she knowingly submitted fraudulent loan applications to UWM in

Michigan, thereby purposefully availing herself of the privilege of conducting business in this forum.  See Exhibit A at ¶ 7.15.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to UWM's claims occurred in this District. Further, in the Wholesale Broker Agreement, Fillerup and UWM agreed that they would submit any action arising out of the Agreement to this Court in this District. *See id.*

## FACTUAL BACKGROUND

### A. UWM's Loan Process

12.    Unlike retail lenders, UWM does not interact directly with a mortgage borrower until after the loan is closed. Rather, UWM's Brokerage Partners, who work directly with borrowers, submit loan applications to UWM.

13.    After a Brokerage Partner submits a loan application to UWM for underwriting, if the loan meets UWM's applicable guidelines, UWM funds the loan.

14.    UWM then sells the loan to an investor, which is most often Fannie Mae or Freddie Mac.

15.    Fannie Mae and Freddie Mac have pre-established guidelines for acquiring loans from UWM which are reflected in their respective, but substantially similar, Selling Guides. See generally *Fannie Mae Selling Guide* (May 28, 2025),

https://selling-guide.fanniemae.com/; *Freddie Mac Selling Guide* (November 11, 2025), https://guide.freddiemac.com/app/guide/home.

16. Accordingly, UWM requires that a loan submitted to it by a Brokerage Partner meets the requirements in the applicable Selling Guide before UWM funds the loan.

17. Fannie Mae's and Freddie Mac's Selling Guides include income, credit, occupancy, and debt-related requirements, among other factors. *Id.*

18. After UWM sells a loan to Fannie Mae or Freddie Mac, as part of their quality-control and post-purchase review procedures, Fannie Mae and Freddie Mac conduct periodic audits of loans they have purchased or securitized. These audits are designed to verify that the loans meet the underwriting guidelines and eligibility requirements reflected in their respective Selling Guides. *Id.* If, during an audit, Fannie Mae or Freddie Mac determines that a purchased loan contains defects or potential misrepresentations, it may issue a repurchase demand to UWM.

19. UWM is legally obligated to repurchase any loan that violates Freddie Mac's or Fannie Mae's representations and warranties, including in cases where borrower or third-party fraud caused a borrower to receive a loan for which they would not otherwise have qualified. See Exhibit R, Freddie Mac Selling Guide, Section 3602.2; See Exhibit S, Fannie Mae Selling Guide, Section A2-3.2-01.

**B. The Wholesale Broker Agreement**

20.     Fillerup is a broker and is one of UWM's Brokerage Partners. See Exhibit A.

21.     In 2020, Fillerup entered into the Agreement with UWM. *Id.*

22.     Under the Agreement, Fillerup agreed to ensure that "each Mortgage Loan [Fillerup] submitted to UWM for underwriting, purchase, and/or funding… [was] true, complete and correct in all material respects as of the date of such submission." *Id.* at ¶ 3.03.

**C. The Fraudulent Loans**

   **a.  Loan 1 - XXXXXXXX16**

23.     On February 11, 2021, UWM closed on Loan 1 in the amount of $545,570. See Exhibit B.

24.      Fillerup gathered, reviewed, and organized the Loan 1 Borrower's financial information and Loan 1 Application and submitted this information to UWM.

25.      Based on the information Fillerup submitted to UWM in connection with the Loan 1 Application, UWM issued a commitment for, underwrote, and funded Loan 1. See generally *id.*

26.      UWM then sold Loan 1 to Freddie Mac, which funded Loan 1 on February 26, 2021. Exhibit J, Loan 1 Repurchase Request Letter.

27.     After UWM sold Loan 1 to Freddie Mac, Freddie Mac audited Loan 1. During its audit, Freddie Mac found discrepancies in the Loan 1 Application, including document misrepresentation, income misrepresentation, and missing documentation:

a.  Fillerup submitted the Loan 1 Application bearing an electronic signature falsely purported to be the Loan 1 Borrower's, which Freddie Mac's Fraud Investigation Unit determined originated from an IP address in Tustin, California—the location of Fillerup's office—and confirmed that the Loan 1 Borrower did not e-sign the documents. *Id.*

b.  Fillerup misrepresented the Loan 1 Borrower's income by submitting a Loan 1 Application that failed to indicate the Loan 1 Borrower was self-employed. *Id.*

c.  Fillerup concealed a critical conflict of interest by submitting the Loan 1 Application that failed to disclose the Loan 1 Borrower's family relationship to the individual who completed the verification of employment, thereby undermining the reliability of the verification of employment. *Id.*

d. Fillerup further misrepresented the Loan 1 Borrower's financial profile by submitting the Loan 1 Application that omitted the most recent two years of individual federal tax returns as required.

28.    On April 3, 2024, Freddie Mac therefore sent UWM a demand to repurchase Loan 1. *Id.*

29.    Upon receiving Freddie Mac's repurchase demand, UWM also conducted its own internal review of Loan 1 and the Loan 1 Application and confirmed Freddie Mac's findings.

30.    But for the misrepresented information, the Loan 1 Borrower would not have qualified for the loan that the Loan 1 Borrower was given.

31.    Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 1 and absorb the resulting financial losses. The original principal amount of Loan 1 was $545,570. See Exhibit B.

32.    UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 1 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 1 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise or government-backed program. UWM was therefore forced to sell Loan 1 on the secondary

"scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

33.     Accordingly, UWM's repurchase of Loan 1 and subsequent resale on the scratch-and-dent market, resulted in a total loss of $100,012.71 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time UWM sold it on the scratch-and-dent market and the amount UWM sold the loan for on the scratch-and-dent market.

   **b.  Loan 2 (XXXXXXXX44)**

34.     On May 20, 2021, UWM closed on Loan 2 in the amount of $474,850 See Exhibit C.

35.      Fillerup gathered, reviewed, and organized the Loan 2 Borrowers' financial information and Loan 2 Application, and submitted this information to UWM.

36.     Based on the information Fillerup submitted to UWM in connection with the Loan 2 Application, UWM issued a commitment for, underwrote, and funded Loan 2. See generally *id.*

37.     UWM then sold Loan 2 to Freddie Mac, which funded Loan 2 on June 8, 2021. Exhibit K, Loan 2 Repurchase Request Letter.

38.     After UWM sold Loan 2 to Freddie Mac, Freddie Mac audited Loan 2. During its audit, Freddie Mac found discrepancies in the Loan 2 Application,

including document misrepresentation, income misrepresentation, and missing documentation:

    a. Fillerup submitted the Loan 2 Application bearing electronic signatures falsely purported to be the Loan 2 Borrowers', which Freddie Mac's Fraud Investigation Unit determined originated from an IP address in Tustin, California—the location of Fillerup's office—and confirmed that the Loan 2 Borrowers did not e-sign the documents. *Id.*

    b. Fillerup misrepresented the Loan 2 Borrowers' income by submitting the Loan 2 Application that claimed one Loan 2 Borrower was self-employed without providing the required documentation to support the claim. Fillerup also failed to provide the required documentation supporting the Loan 2 co-Borrower's expected return-to-work date and related income. *Id.*

39.    On March 22, 2024, Freddie Mac therefore sent UWM a demand to repurchase Loan 2. *Id.*

40.    Upon receiving Freddie Mac's repurchase demand, UWM also conducted its own internal review of Loan 2 and the Loan 2 Application and confirmed Freddie Mac's findings.

41.     But for the misrepresented information, the Loan 2 Borrowers would not have qualified for the loan that the Loan 2 Borrowers were given.

42.     Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 2 and absorb the resulting financial losses. The original principal amount of the loan was $474,850. See Exhibit C.

43.     UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 2 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 2 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise, or government-backed program. UWM was therefore forced to sell Loan 2 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

44.     Accordingly, UWM's repurchase of Loan 2 and subsequent resale on the scratch-and-dent market resulted in a total loss of $110,520.37 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time UWM sold it on the scratch-and-dent market and the amount UWM sold the loan for on the scratch-and-dent market.

### c.    Loan 3 (XXXXXXXX93)

45.    On June 9, 2021, UWM closed on Loan 3 in the amount of $240,000. See Exhibit D.

46.    Fillerup gathered, reviewed, and organized the Loan 3 Borrower's financial information and Loan 3 Application, and submitted this information to UWM.

47.    Based on the information Fillerup submitted to UWM in connection with the Loan 3 Application, UWM issued a commitment for, underwrote, and funded Loan 3. See generally *id.*

48.    UWM then sold Loan 3 to Fannie Mae on June 23, 2021. Exhibit L, Loan 3 Repurchase Request Letter.

49.    After UWM sold Loan 3 to Fannie Mae, Fannie Mae audited Loan 3. During its audit, Fannie Mae found discrepancies in the Loan 3 Application, including an undisclosed mortgage:

        a. Fillerup misrepresented the Loan 3 Borrower's liabilities by submitting the Loan 3 Application that failed to disclose an additional mortgage debt with Suntrust Bank, which Fannie Mae discovered through a recent credit report. *Id.*

50.    On March 8, 2022, Fannie Mae therefore sent UWM a demand to repurchase Loan 3. *Id.*

51.    Upon receiving Fannie Mae's repurchase demand, UWM also conducted its own internal review of Loan 3 and the Loan 3 Application and confirmed Fannie Mae's findings.

52.    But for the misrepresented information, the Loan 3 Borrower would not have qualified for the loan that the Loan 3 Borrower was given.

53.    Upon Fannie Mae's repurchase demand, UWM was contractually obligated to pay Fannie Mae the full outstanding balance of Loan 3 and absorb the resulting financial losses. The original principal amount of the loan was $240,000. See Exhibit D.

54.    UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 3 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 3 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise, or government-backed program. UWM was therefore forced to sell Loan 3 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

55.    Accordingly, UWM's repurchase of Loan 3 and subsequent resale on the scratch-and-dent market resulted in a total loss of $78,612.45 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time

UWM sold it on the scratch-and-dent market and the amount UWM sold the loan for on the scratch-and-dent market.

### d.    Loan 4 (XXXXXXXX95)

56.    On June 24, 2021, UWM closed on Loan 4 in the amount of $548,274. See Exhibit E.

57.    Fillerup gathered, reviewed, and organized the Loan 4 Borrower's financial information and Loan 4 Application and submitted this information to UWM.

58.    Based on the information Fillerup submitted to UWM in connection with the Loan 4 Application, UWM issued a commitment for, underwrote, and funded Loan 4. See generally *id.*

59.    UWM then sold Loan 4 to Freddie Mac, which funded Loan 4 on July 8, 2021. Exhibit M, Loan 4 Repurchase Request Letter.

60.    After UWM sold Loan 4 to Freddie Mac, Freddie Mac audited Loan 4. During its audit, Freddie Mac found discrepancies in the Loan 4 Application, including document misrepresentation, income misrepresentation, and missing documentation:

>    a. Fillerup submitted the Loan 4 Application bearing an electronic signature falsely purported to be the Loan 4 Borrower's, which Freddie Mac's Fraud Investigation Unit determined originated from

an IP address in Tustin, California—the location of Fillerup's office—and confirmed that the Loan 4 Borrower did not e-sign the documents. *Id.*

b. Fillerup submitted the Loan 4 Application, which claimed the Loan 4 Borrower was self-employed without providing the required supporting income and tax return documentation. *Id.*

c. Fillerup further failed to disclose material information by submitting the Loan 4 Application without the required credit report. *Id.*

61.    On March 22, 2024, Freddie Mac therefore sent UWM a demand to repurchase Loan 4. *Id.*

62.    Upon receiving Freddie Mac's repurchase demand, UWM also conducted its own internal review of Loan 4 and the Loan 4 Application and confirmed Freddie Mac's findings.

63.    But for the misrepresented information, the Loan 4 Borrower would not have qualified for the loan that the Loan 4 Borrower was given.

64.    Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 4 and absorb the resulting financial losses. The original principal amount of the loan was $548,274. See Exhibit E.

65.     UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 4 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 4 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise or government-backed program. UWM was therefore forced to sell Loan 4 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

66.     Accordingly, UWM's repurchase of Loan 4 and subsequent resale on the scratch-and-dent market resulted in a total loss of $120,957.85 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time UWM sold it on the scratch-and-dent market, and the amount UWM sold the loan for on the scratch-and-dent market.

### e.     Loan 5 (XXXXXXXX98)

67.     On June 10, 2021, UWM closed on Loan 5 in the amount of $384,000. See Exhibit F.

68.      Fillerup gathered, reviewed, and organized the Loan 5 Borrower's financial information and Loan 5 Application and submitted this information to UWM.

69.     Based on the information Fillerup submitted to UWM in connection with the Loan 5 Application, UWM issued a commitment for, underwrote, and funded Loan 5. See generally *id.*

70.     UWM then sold Loan 5 to Freddie Mac, which funded Loan 5 on June 23, 2021. Exhibit N, Loan 5 Repurchase Request Letter.

71.     After UWM sold Loan 5 to Freddie Mac, Freddie Mac audited Loan 5. During its audit, Freddie Mac found discrepancies in the Loan 5 Application, including document misrepresentation, income misrepresentation, and missing documentation:

    a.  Fillerup submitted the Loan 5 Application, which included document misrepresentation in the form of a fabricated processing fee and electronic signatures falsely purported to be the Loan 5 Borrower's. Freddie Mac's Fraud Investigation Unit (1) determined the electronic signatures originated from an IP address in Tustin, California—the location of Fillerup's office; (2) confirmed the Loan 5 Application was not e-signed by the Loan 5 Borrower; and (3) determined that the third-party processing fee on the Loan 5 closing disclosure had been fabricated. *Id.*

    b.  Fillerup submitted the Loan 5 Application, which stated the Loan 5 Borrower was self-employed. However, during its review of the

Loan 5 Application, Freddie Mac determined the purported documentation of the Loan 5 Borrower's self-employment was supported by fraudulent tax returns, a fraudulent Bank of America account, and a fraudulent gift letter provided to show sufficient funds required for closing. *Id.*

c. Fillerup submitted the Loan 5 Application and failed to include several required documents, including W-2s, a breakdown of 2020 earnings and paystubs, evidence of transfer of work locations, documentation of transfer to a Bank of America account, and the Desktop Underwriter feedback certificate. *Id.*

72.   On March 22, 2024, Freddie Mac therefore sent UWM a demand to repurchase Loan 5. *Id.*

73.   Upon receiving Freddie Mac's repurchase demand, UWM also conducted its own internal review of Loan 5 and the Loan 5 Application and confirmed Freddie Mac's findings.

74.   But for the misrepresented information, the Loan 5 Borrower would not have qualified for the loan that the Loan 5 Borrower was given.

75.   Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 5 and absorb the

resulting financial losses. The original principal amount of Loan 5 was $384,000. See Exhibit F.

76.     UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 5 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 5 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise or government-backed program. UWM was therefore forced to sell Loan 5 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

77.     Accordingly, UWM's repurchase of Loan 5 and subsequent resale on the scratch-and-dent market resulted in a total loss of $62,504.78 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time UWM sold it on the scratch-and-dent market and the amount UWM sold the loan for on the scratch-and-dent market.

### f.  Loan 6 (XXXXXXXX27)

78.     On June 16, 2021, UWM closed on Loan 6 in the amount of $380,000. See Exhibit G.

79.     Fillerup gathered, reviewed, and organized the Loan 6 Borrower's financial information and Loan 6 Application and submitted this information to UWM.

80.     Based on the information Fillerup submitted to UWM in connection with the Loan 6 Application, UWM issued a commitment for, underwrote, and funded Loan 6. See generally *id.*

81.     UWM then sold Loan 6 to Freddie Mac, which funded Loan 6 on July 7, 2021. Exhibit O, Loan 6 Repurchase Request Letter.

82.     After UWM sold Loan 6 to Freddie Mac, Freddie Mac audited Loan 6. During its audit, Freddie Mac found discrepancies in the Loan 6 Application, including document misrepresentation, income misrepresentation, and missing documentation:

> a. Fillerup submitted the Loan 6 Application, which included document misrepresentation in the form of a fabricated processing fee and electronic signatures falsely purported to be the Loan 6 Borrower's. Freddie Mac's Fraud Investigation Unit (1) determined the electronic signatures originated from an IP address in Tustin, California—the location of Fillerup's office; (2) confirmed the Loan 6 Application was not e-signed by the Loan 6 Borrower; and (3)

determined that the third-party processing fee on the Loan 6 closing disclosure had been fabricated. *Id.*

    b.  Fillerup submitted the Loan 6 Application, which included income misrepresentation in the form of a fraudulent paystub and W-2s. *Id.*

    c.  Fillerup submitted the Loan 6 Application without identifying the account from which the Loan 6 Borrower's funds were transferred, resulting in insufficient assets to close. *Id.*

83.   On March 22, 2024, Freddie Mac therefore sent UWM a demand to repurchase Loan 6. *Id.*

84.   Upon receiving Freddie Mac's repurchase demand, UWM also conducted its own internal review of Loan 6 and the Loan 6 Application and confirmed Freddie Mac's findings.

85.   But for the misrepresented information, the Loan 6 Borrower would not have qualified for the loan that the Loan 6 Borrower was given.

86.   Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 6 and absorb the resulting financial losses. The original principal amount of Loan 6 was $380,000. See Exhibit G.

87.   UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 6 Application, resulted in an actual

financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 6 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise or government-backed program. UWM was therefore forced to sell Loan 6 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

88.    Accordingly, UWM's repurchase of Loan 6 and subsequent resale on the scratch-and-dent market resulted in a total loss of $60,519.83 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time UWM sold it on the scratch-and-dent market and the amount UWM sold the loan for on the scratch-and-dent market.

### g.  Loan 7 (XXXXXXXX89)

89.    On August 19, 2021, UWM closed on Loan 7 in the amount of $620,000. See Exhibit H.

90.    Fillerup gathered, reviewed, and organized the Loan 7 Borrower's financial information and Loan 7 Application and submitted this information to UWM.

91.    Based on the information Fillerup submitted to UWM in connection with the Loan 7 Application, UWM issued a commitment for, underwrote, and funded Loan 7. See generally *id.*

92.    UWM then sold Loan 7 to Freddie Mac, which funded Loan 7 on September 9, 2021. Exhibit P, Loan 7 Repurchase Request Letter.

93.    After UWM sold Loan 7 to Freddie Mac, Freddie Mac audited Loan 7. During its audit, Freddie Mac found discrepancies in the Loan 7 Application, including document misrepresentation and income misrepresentation:

   a. Fillerup submitted the Loan 7 Application, which included document misrepresentation in the form of a fabricated processing fee and electronic signatures falsely purported to be the Loan 7 Borrower's. Freddie Mac's Fraud Investigation Unit (1) determined the electronic signatures originated from an IP address in Tustin, California—the location of Fillerup's office; (2) confirmed the Loan 7 Application was not e-signed by the Loan 7 Borrower; and (3) determined that the third-party processing fee on the Loan 7 closing disclosure had been fabricated. *Id.*

   b. Fillerup submitted the Loan 7 Application, which included income misrepresentation in the form of fraudulent paystubs, W-2s, and employment documentation. *Id.*

94.    On March 22, 2024, Freddie Mac therefore sent UWM a demand to repurchase Loan 7. *Id.*

95.    Upon receiving Freddie Mac's repurchase demand, UWM also

conducted its own internal review of Loan 7 and the Loan 7 Application and confirmed Freddie Mac's findings.

96. But for the misrepresented information, the Loan 7 Borrower would not have qualified for the loan that the Loan 7 Borrower was given.

97. Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 7 and absorb the resulting financial losses. The original principal amount of Loan 7 was $620,000. See Exhibit H.

98. UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 7 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects, including material misrepresentations, Loan 7 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise or government-backed program. UWM was therefore forced to sell Loan 7 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

99. Accordingly, UWM's repurchase of Loan 7 and subsequent resale on the scratch-and-dent market resulted in a total loss of $76,612.45 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time

UWM sold it on the scratch-and-dent market and the amount UWM sold the loan for on the scratch-and-dent market.

### h.  Loan 8 (XXXXXXXX08)

100.   On September 4, 2021, UWM closed on Loan 8 in the amount of $386,000. See Exhibit I.

101.   Fillerup gathered, reviewed, and organized the Loan 8 Borrowers' financial information and Loan 8 Application and submitted this information to UWM.

102.   Based on the information Fillerup submitted to UWM in connection with the Loan 8 Application, UWM issued a commitment for, underwrote, and funded Loan 8. See generally *id.*

103.   UWM then sold Loan 8 to Freddie Mac, which funded Loan 8 on September 21, 2021. Exhibit Q, Loan 8 Repurchase Request Letter.

104.   After UWM sold Loan 8 to Freddie Mac, Freddie Mac audited Loan 8. During its audit, Freddie Mac found discrepancies in the Loan 8 Application, including document misrepresentation and missing documentation:

> a.  Fillerup submitted the Loan 8 Application bearing electronic signatures falsely purported to be the Loan 8 Borrowers', which Freddie Mac's Fraud Investigation Unit determined originated from an IP address in Tustin, California—the location of Fillerup's

office—and confirmed that the Loan 8 Borrowers did not e-sign the documents. *Id.*

b. Fillerup submitted the Loan 8 Application without including documentation of the continuance of retirement income. Absent this information, Freddie Mac could not calculate the total monthly qualifying income and ratios for the loan. *Id.*

105.   On April 17, 2024, Freddie Mac therefore sent a demand to repurchase Loan 8. *Id.*

106.   Upon receiving Freddie Mac's repurchase demand, UWM also conducted its own internal review of Loan 8 and the Loan 8 Application and confirmed Freddie Mac's findings.

107.   But for the misrepresented information, the Loan 8 Borrowers would not have qualified for the loan that the Loan 8 Borrowers were given.

108.   Upon Freddie Mac's repurchase demand, UWM was contractually obligated to pay Freddie Mac the full outstanding balance of Loan 8 and absorb the resulting financial losses. The original principal amount of Loan 8 was $386,000. See Exhibit I.

109.   UWM's repurchase obligation, triggered by Fillerup's material misrepresentations in connection with the Loan 8 Application, resulted in an actual financial loss to UWM. Upon UWM's repurchase, due to the identified defects,

including material misrepresentations, Loan 8 became ineligible for resale to Fannie Mae, Freddie Mac, or any other government-sponsored enterprise or government-backed program. UWM was therefore forced to sell Loan 8 on the secondary "scratch-and-dent" market, where only distressed-asset investors and nonbank servicers purchase defective loans at a significant discount.

110.    Accordingly, UWM's repurchase of Loan 8 and subsequent resale on the scratch-and-dent market resulted in a total loss of $88,248.06 to UWM. This loss reflects the difference between the unpaid principal balance on the loan at the time UWM sold it on the scratch-and-dent market, and the amount UWM sold the loan for on the scratch-and-dent market.

## COUNT I - FRAUDULENT MISREPRESENTATION

111.    UWM re-alleges and incorporates the foregoing Paragraphs 1–110 as if fully restated.

112.    Fillerup, as the mortgage broker for the Loans, intentionally made or caused to be made false representations in connection with the Loan Applications submitted to UWM, including by forging Borrowers' signatures, submitting altered bank account statements and W-2s for the Borrowers, misrepresenting the Borrowers' income, and failing to disclose the Borrowers' additional mortgage or debt.

113.   Fillerup knew the representations she made regarding the Loan Applications were false when they were made.

114.   Fillerup knew or should have known that if she disclosed the Borrowers' true bank account information, income, and additional mortgage or debt, the Borrowers would not have been eligible to obtain the Loans from UWM.

115.   Fillerup made the false representations regarding the Loan Applications, or caused them to be made, with the intention that UWM would rely on the false representations.

116.   UWM acted in reliance upon Fillerup's false representations regarding the Loans and Loan Applications by, among other things, underwriting, approving, and funding the Loans.

117.   If UWM had known of the Borrowers' true bank account information, income, and additional mortgage or debt obligations, it would not have approved the Loans to the Borrowers, nor would it have funded the Loans.

118.   Fillerup's conduct in knowingly misstating the Borrowers' bank account information, income, and additional mortgage or debt constitutes false misrepresentations of material fact.

119.   Due to the misrepresentations, under the requirements of the Fannie Mae Selling Guide (see generally *Fannie Mae Selling Guide* (May 28, 2025), https://selling-guide.fanniemae.com/) and the Freddie Mac Selling Guide (see

generally *Freddie Mac Selling Guide* (November 11, 2025), https://guide.freddiemac.com/app/guide/home), the Loans were no longer eligible for purchase by Fannie Mae or Freddie Mac, forcing UWM to repurchase the Loans from Fannie Mae and Freddie Mac.

120.    Following UWM's repurchase of the Loans, UWM was forced to resell the Loans on the secondary scratch-and-dent market at steep discounts.

121.    Due to Fillerup's fraudulent misrepresentations, UWM has suffered substantial economic damages of $ $697,988.50, plus its attorneys' fees and costs.

WHEREFORE, UWM requests that this Honorable Court: (a) enter judgment in its favor and against Fillerup awarding UWM damages against Fillerup, plus reasonable attorneys' fees; and (b) award any other relief this Court deems just and proper.

## **PRAYER FOR RELIEF**

122.    UWM respectfully requests that the Court enter a judgment in its favor against Fillerup and award the following relief:

a. Compensatory damages in the amount of at least $697,988.50;

b. Other compensatory damages relating to the misrepresentations;

c. Attorney fees, costs, and other expenses UWM incurred in this action;

d. Pre- and post-judgment interest;

e. Such other and further relief as the Court may deem just and proper.

WHEREFORE, UWM requests that this Honorable Court: (a) enter judgment in its favor and against Fillerup awarding UWM damages against Fillerup, plus reasonable attorneys' fees; and (b) award any other relief this Court deems just and proper.

## **JURY DEMAND**

UWM respectfully demands a trial by jury on all issues triable by jury.

Dated:  December 9, 2025                    Respectfully submitted,

                                   By: */s/ Moheeb H. Murray*
                                   Moheeb H. Murray (P63893)
                                   Alexandra Hathaway Tillman
                                   (P87532)
                                   100 W. Big Beaver Road, Suite 400
                                   Troy, MI 48084
                                   (248) 822-7800
                                   murray@bsplaw.com
                                   tillman@bsplaw.com

                                   *Attorneys for Plaintiff*
                                   *United Wholesale Mortgage, LLC*